## Purdy et al. *v.* Hazeltine, Appellant.

Argued April 6, 1936. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas F. Mount,* with him *George M. Brodhead, Jr., David I. McAlister,* of *Hughes, McAlister & Zelt,* and

*Joseph W. Henderson,* of *Rawle & Henderson,* for appellant.

*William H. Eckert,* with him *Robert E. Burnside,* of *Burnside, Moninger & Burnside* and *Smith, Buchanan, Scott & Gordon,* for appellees.

OPINION BY MR. JUSTICE LINN, April 30, 1936:

This suit is by parents in their own right and on behalf of their child for injuries to the child alleged to have resulted from contact with defendant's automobile in a street in Washington, Pennsylvania. The jury rendered verdicts in favor of the plaintiffs. The learned court below granted defendant's motion for judgment notwithstanding the verdict in the parents' case but refused the motion in the minor's case; defendant has appealed from the judgment for the minor.

The child, aged four years, was injured on Wylie Avenue between Allison and Jefferson Avenues, two streets, one square apart. The width of Wylie Avenue is not stated nor is the distance between the other two streets. After defendant's car had moved on Wylie Avenue from Allison to Jefferson, where it stopped to await a green light, the child was found lying in the cartway of Wylie Avenue, about halfway between Allison and Jefferson and three or four feet from the curb. At or near this point a private driveway leads to the right from Wylie Avenue. No witness called by the plaintiffs saw the child struck.* When defendant stopped at the Jeffer-

---

* Defendant called a witness who testified: "Q. Where was he when you first saw him? A. He was on the curb. Q. What did the Purdy boy do? A. As Mr. Hazeltine's car was coming down street, just then coming down, and the Purdy boy darted into the back end of the car and was thrown into the street. Q. What part of the Hazeltine car did the Purdy boy strike? A. Why, the right rear fender. Q. Right rear fender? A. Yes, sir." As this evidence is unfavorable to plaintiffs, and favorable to defendant, we lay it aside.

son Avenue intersection he was informed by the driver of a truck that had followed him, that a child had been injured by his car. Plaintiffs contend that the evidence supports a finding that the child came in contact with the right side of defendant's car which had passed the point in question about four feet from the curb.

Defendant's car had entered Wylie Avenue by a right-turn from Allison Avenue, and was followed by a truck at a distance of ten feet. The driver of this truck and his helper testified in plaintiffs' behalf. They saw the child on the sidewalk; one of them says he saw it standing on the sidewalk at or near the curb; the other saw it running along the sidewalk. Defendant testified that he never saw the child.

Plaintiffs contend that it was the duty of defendant to see the child on the sidewalk and so to control the movement of his car as to avoid injuring the child if it should suddenly leave the sidewalk and enter the cartway. On the other hand, appellant contends that the record shows that he had no reason to look for or to expect the child in the cartway.

It is well settled that the measure of care to be exercised by a driver at or approaching a public crossing is greater than between intersections. "The degree of care required in operating a car between crossings is not as great as it is at a public crossing. The driver cannot, however, carelessly inflict injuries on users of highways between crossings. His duty is governed entirely by the circumstances of whether he saw such persons in the way in time to avoid hitting them, or whether he should anticipate their acts when they have committed themselves to a dangerous position . . . a driver is not bound to anticipate that a child will suddenly dart from the side of the street; but if at a designated place where there is anything to challenge his attention, and warn him that he should expect heedless acts, it becomes his duty to avoid, if possible, an accident . . . no responsibility may attach to the driver of the car, if, with the

car under control, a child, while in the cartway, deliberately steps in front of it": *Bowman v. Stouman,* 292 Pa. 293, 297, 141 A. 41; *Goldberg v. P. R. T.,* 299 Pa. 79, 149 A. 104. If the child was injured by defendant's car, the injury took place, not near a public crossing but about the middle of the square. It is also agreed that "To hold a driver of a car liable for a collision between crossings, the pedestrian must have been 'on the cartway a sufficient length of time to be seen, the driver of the car being far enough away to bring his machine under control' ": *McAvoy v. Kromer,* 277 Pa. 196, 199, 120 A. 762; *Gavin v. Bell Telephone Co.,* 87 Pa. Superior Ct. 276; *McMillen v. Strathmann,* 264 Pa. 13, 107 A. 332. This difference in the measure of care required of automobile drivers has received legislative recognition in the provisions of the Motor Vehicle Code regulating and restricting the rate of speed in passing public schools: Act of 1929, P. L. 905, section 1002, as amended by the Acts of 1931, P. L. 751, section 2, and 1935, P. L. 1056, section 29 (75 PS section 501) ; and see *Glowaskie v. Rhoads,* 312 Pa. 508, 166 A. 850; *Quattrochi v. Pittsburgh Rys. Co.,* 309 Pa. 377, 164 A. 59.

The evidence (dealing with it in the light most favorable to plaintiffs) does not show that the minor was in the cartway in front of defendant's car. As the child was not in the cartway, the measure of care exercisable by defendant was less than if it had been there. The question then is how the matter is affected by the child's presence on the sidewalk. The evidence does not show exactly where the child was. The plaintiffs had the burden of proof. When the following truck turned into Wylie Avenue, the truck driver saw the child on the right-hand sidewalk "Just in about the middle of the block"; the child "wasn't exactly moving," he was "facing the other side of the street." When defendant's car passed that point, the witness said, he saw the minor "lying down," "lying on the street." He did not see how the child got into the street from "around the edge of the

curb" where he had last seen it nor did he see whether the child was struck by the car, or fell from some other cause, yet this witness was driving ten feet behind defendant's car. The evidence of this witness leaves the facts too uncertain and indefinite. He also says that the child was not "standing on the curbstone at all" but on the private driveway which, as has already been stated, led from Wylie Avenue to the right. He testified too, that he was not "watching the boy all the time." He was asked "As a matter of fact you don't even know the boy was struck by the car—he might have fallen, isn't that true, for all you know? A. For all I know, yes." He testified that a car was parked along the curb which to some extent obstructed his view of the sidewalk. He was asked "Were you watching the boy all the time? A. I glanced at him to be sure he didn't run out in front of Mr. Hazeltine [defendant's car] or in back of him, because I wanted to be sure—I always watch that, and I just glanced at him until hid from the view from me in the road." Notwithstanding that effort, he didn't see how the child came to be injured.

Another witness, the truck driver's helper, also testified in plaintiffs' case. He first saw the child "running up the sidewalk" "half a block" away. He saw the child "enter upon this driveway" referred to above, and from there saw him look across Wylie Avenue. He saw nothing "which indicated he was struck by the Hazeltine car," though he saw "the boy lying in the street after the car had gone past." This is the evidence of a witness who, like the other witness, was in a truck "ten or twelve feet behind" defendant's car. His evidence also leaves the facts uncertain. He testified, for example, as follows: "Q. Then you didn't see him standing on any curbstone or standing at the driveway—what you saw was the boy run up the street and turn and run out into the street, is that right? A. Yes sir. Q. And you didn't see the boy struck at all? A. No. Q. And the street is very rough there, isn't it? A. Yes sir. . . . Q. One of

the roughest blocks in the City of Washington, isn't it? A. Yes. Q. The boy could have stumped his toe on one of those raised bricks and fallen down, so far as you know—isn't that correct? A. Well, he might have; I couldn't say." He estimated that defendant's car was moving "about fifteen miles an hour," the same rate at which the witness's truck moved. The evidence of these witnesses, following defendant's car as it drove up Wylie Avenue, leaves no doubt that the child was not in the cartway in front of the car. If, as the second witness said, he saw "the boy run up the street [referring, as we understand it, to his running on the sidewalk as previously described] and *turn and run out into the street"* in circumstances, where, as he said, the child may have stumbled on the rough surface of the avenue, it is clear that the conduct of the child is within that class of cases in which it has uniformly been held that a driver is not required to anticipate what a child in a place of safety on a sidewalk may do; in such circumstances liability does not follow from the mere fact that the driver did not see the child. The evidence will not support a finding that the child was in the cartway long enough to enable defendant to stop or change his direction in time to avoid injury (assuming that the child came in contact with the car). To allow the jury to find from such evidence that defendant was negligent and that the negligence caused the injury would be supporting a verdict on mere conjecture, and that is not permissible: *Stahl v. Sollenberger,* 246 Pa. 525, 92 A. 720; *McAvoy v. Kromer,* 277 Pa. 196, 120 A. 762, supra.

The judgment is reversed and is here entered for defendant.