## Commonwealth v. Horvath

*Thomas R. MacFarland*, Assistant District Attorney, for Commonwealth.

*Todd Daniel*, for defendant.

PIEKARSKI, J., January 26, 1949.—After conviction by the jury on a charge of involuntary manslaughter, defendant filed motions in arrest of judgment and for a new trial. These motions were dismissed and judgment of sentence was entered.

Mary Carol Grimshaw, a little girl five years of age, died from injuries consequent upon her being struck by the automobile which defendant drove in an easterly direction on Cambria Street, Philadelphia, on June 23, 1948, about 1:15 p. m.

Defendant's demurrer at the close of the Commonwealth's testimony was overruled. On the motions, the matter was argued before us on the sole premise that the Commonwealth had not made out a case of involuntary manslaughter. Although a motion in arrest of judgment was filed, no errors in the record were pointed out (see Commonwealth v. J. Jones, 100 Pa. Superior Ct. 121), and defendant's argument was confined to the insufficiency of the evidence. We, therefore, assume that the motion for new trial covers all the points intended to be pressed by defendant. There were no specific exceptions to the charge itself; however, two points for charge had been refused, they being numbers 2 and 6 and to the refusal of those points, an exception was entered. Point number 6 was a point for binding instructions and point number 2 was refused because it included the words ". . . which approximated acting in an unlawful manner": Commonwealth v. Aurick, 342 Pa. 282, 286, 287.

Defendant's car was coming in an easterly direction on Cambria Street between rows of cars parked on both sides of Cambria Street west of Third Street. In its path of passage defendant's car had room enough to proceed but the open space was not sufficient for two cars in motion to pass each other. The Commonwealth's testimony discloses this defendant as having proceeded under these circumstances at 30 miles per hour and having struck the child just about on the line of the crosswalk, also stated as right on the building line. The child was crossing at the west crosswalk, having come from the sidewalk in front of a parked car on the south side of Cambria Street. The body was picked up a distance from six to eight feet from the south curb. Defendant's automobile, after striking the child, proceeded a distance estimated by one witness to be 50 feet and by another witness 65 feet.

There is testimony that no signal was given at the approach toward the intersection.

Defendant's version fixes the speed of the car at 25 miles per hour and explained the distance from his first knowledge of the situation (he felt a bump and he thought he had a flat tire) by testifying that he stopped "quick", and came to a rest near the east curb of Third Street.

The question for determination may be put thus: Where it is shown that a child of five at a regular crosswalk crosses an intersection four feet in front of a parked car and the driver operating between two rows of parked cars in a path of passage wide enough only for his car at a speed of 30 miles an hour strikes the child, should the case be submitted to a jury or should there be either binding instructions for defendant or his demurrer sustained?

Involuntary manslaughter is the killing without malice and unintentionally which results from doing an unlawful act not amounting to a felony or from negligently doing a lawful act or from the negligent omission to perform a legal duty: Commonwealth v. Mayberry, 290 Pa. 195.

Had this impact taken place between intersections the situation then would have given rise to a different degree of responsibility on the part of the driver for in that case the driver's foreseeability would not have included the responsibility of anticipating someone coming from between these parked cars: Purdy et al. v. Hazeltine, 321 Pa. 459. But the locus of this killing being the crosswalk, defendant driver had the obligation to foresee the probability of pedestrians crossing at that point: Maselli et al. v. Stephens, 331 Pa. 491. Indeed, that is the place where the law tells the pedestrian to cross (Lane v. Samuels et al., 350 Pa. 446), and that is the place where the law tells the driver

that due care is his highest duty: Johnson v. French, 291 Pa. 437. And if death results in consequence of his negligent act or in consequence of his failure to perform a duty, that is involuntary manslaughter.

The motion for new trial and the contention that the demurrer should have been sustained appear to be predicated on the theory that wantonness, recklessness, and utter disregard of the life of others must characterize the negligence to warrant its submission to the jury. This theory overlooks the legal conclusion that that character of negligence would subject a defendant to the charge of felonious homicide, not merely involuntary manslaughter: Commonwealth v. Ochs, 91 Pa. Superior Ct. 528; Commonwealth v. McLaughlin, 293 Pa. 218.

It will be noted that in the charge the jury was told that ordinary negligence is not sufficient.

Now in this case the jury may have concluded: (1) That this defendant failed to exercise care lest his action result in injury to others; (2) that defendant's lack of elementary forethought caused the death; (3) that defendant by his conduct neglected to foresee the injury which he as a reasonable human being should have foreseen (these conclusions might have stemmed from defendant's speed as he approached the intersection; defendant's inability to control his car as he approached the intersection, evidenced by his failure to bring his car to a stop until he had passed Third Street and gone to the middle entrance of the property on Cambria Street east of Third Street; his failure to see the child crossing at the intersection, particularly since the witness who operated the car in the opposite direction testified that the child was visible in the intersection to her) ; (4) that, with cars parked on both sides of the street leaving but one lane of traffic open, defendant should have operated his car more slowly since he saw that his view to both sides of

the crossing was obstructed by the lines of automobiles parked up to within a very few feet of the intersection (this circumstance would place an added duty upon defendant about to enter the intersection). So, too, the jury may have found that the speed was an unlawful speed under The Vehicle Code because it may have been unreasonable under the particular circumstances there obtaining.

It is suggested that the culpability of this defendant comes specifically within the statement in 26 Am. Jur. 299, §210:

"Aside from the facts that a more culpable degree of negligence is required in order to establish a criminal homicide than is required in a civil action for damages and that contributory negligence is not a defense, criminal responsibility for a negligent homicide is ordinarily to be determined pursuant to the general principles of negligence, the fundamental of which is knowledge, actual or imputed, that the act of the slayer tended to endanger life. The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act."

We make this suggestion because defendant must have known that he was approaching an intersection, that from the circumstances there plainly visible to him (i. e., automobiles parked to the very intersection), he would have a very limited opportunity to observe pedestrian (or vehicular) traffic lawfully using the intersection. Knowing this, were defendant's acts consonant with that foreseeability which was his duty under the circumstances as then existed, or were they repugnant to it? That was a question for the jury. To hold otherwise would be to authorize blind entrance into an intersection. If it is admitted

that a high duty of care is required at intersections, then the obligation of a driver upon his entry into an intersection whose immediate approach is partly obscured must be not less, but indeed greater. Thus it is, that no set rule as to the operation of a car can be made to apply specifically in all cases, for what may be culpable negligence in one case may be ordinary and prudent conduct in another. Yet from both acts injury may result; in the one case, fault; in the other, accident.

In the course of our charge, we several times cautioned the jury that carelessness or negligence was not enough—that in addition to carelessness or negligence the jury must find in the defendant's conduct a disregard of human life and an indifference to circumstances before it could return a guilty verdict. Such operation of an automobile resulting in a death constitutes involuntary manslaughter: Commonwealth v. Dellcese, 155 Pa. Superior Ct. 120.

The jury has evaluated the conduct of defendant in the light of his duty at this intersection under the circumstances then and there prevalent, and we see no reason for the disturbance of that conclusion.