435 A.2d 184

**Kathleen MORRIS, Appellant,**

v.

**John F. MOSS.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed May 15, 1981.

Reargument Denied Oct. 15, 1981.

588

590

Gerard J. Jackson, Philadelphia, for appellant.

Edward J. Carney, Jr., Media, for appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

This case arises from an automobile accident in which the automobile driven by the appellee struck the appellant who was a pedestrian. A jury found the defendant not to have been negligent. Appellant argues that certain evidence was improperly admitted and that the charge to the jury failed to include points which appellant claims should have been explained to the jury. Finding error in the instructions given to the jury, we reverse the order of the lower court and remand for a new trial.

Appellant's first allegation of error is the admission of testimony by a policeman who arrived at the scene of the accident after it occurred and who testified as to his estimate of the speed at which appellant was traveling. Appellant objects to the use of his testimony on the grounds that the witness was not properly qualified as an expert and that he testified on an ultimate issue in the case. Neither argument calls for the exclusion of the testimony.

At the outset of our discussion we note that:

Rulings on evidence are within the discretion of the trial judge and will not be reversed absent a manifest abuse of that discretion. *Capan v. Divine Providence Hospital,* 270 Pa.Super. 127, 410 A.2d 1282 (1980), *Westerman v. Stout,* 232 Pa.Super. 195, 335 A.2d 741 (1975).

In establishing that Officer Boyer was an expert qualified to state an approximate rate of speed based on skid marks, the appellee's counsel asked the witness what courses he had taken which would be of assistance in interpreting skid marks. The witness stated that he had taken college seminars in traffic safety and traffic accidents and had also attended State Police seminars on traffic safety. He also testified that at the time of the accident he had been an officer for eight years. The witness was asked to estimate the speed at which appellee had been traveling based on these experiences.

In *Rosato v. Nationwide Insurance Company,* 263 Pa.Super. 340, 397 A.2d 1238 (1979), this court said "However, an officer may, based upon skid measurements and his expertise, state the approximate speed of a car even though he was not present at the accident." 263 Pa.Super. at 345, 397 A.2d at 1241. See: *Rutovitsky v. Magliocco,* 394 Pa. 387, 147 A.2d 153 (1959). We would add that, as with the admission of evidence, the question of the qualifications of an expert witness is one for the discretion of the trial court. *Commonwealth v. Williams,* 270 Pa.Super. 27, 410 A.2d 880 (1980). "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert." *Kravinsky v. Glover,* 263

Pa.Super. 8, 396 A.2d 1349 (1979). The lower court did not abuse its discretion in this matter.

Appellant cites the cases of *Brodie v. Philadelphia Transportation Company*, 415 Pa. 296, 203 A.2d 657 (1964) and *Algeo v. Pittsburgh Railways Company*, 202 Pa.Super. 548, 198 A.2d 415 (1964) as supporting his argument. The cases are easily distinguished from the one before us.

■ In the present case, the officer testified, in relevant part, only to the speed at which he estimated the appellee to have been driving. In *Brodie*, the witness whose testimony was found improperly admitted had testified additionally that the car in question had been out of control and was traveling too fast for conditions. His testimony went beyond the estimate of speed, based on skid marks, found permissible in *Rutovitsky* and *Rosato*.

In *Algeo*, the witness testified that the accident could not have occurred in the manner in which the opposing party contended it had. This testimony also included statements beyond those permitted by *Rutovitsky* and *Rosato*. The exclusion of testimony in *Brodie* and *Algeo* does not justify its exclusion here.

Appellant also argues that the introduction of the hospital record was error in this case because the notation contained in the record that appellant was conscious while in the emergency room is one of opinion, not fact, and as such does not fall into the hearsay exception found in the Business Records Act.[1] We agree.

■ Hospital records are admissible to show the fact of hospitalization, treatment prescribed and symptoms found. *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975), *Platt v. John Hancock Mutual Life Insurance Company*, 361 Pa. 652, 66 A.2d 266 (1949).

As was explained in *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979):

1. Uniform Business Records as Evidence Act, Act of July 9, 1976, P.L. 586, No. 142, § 2; 42 Pa. CSA § 6108.

No such doubts as to reliability and accuracy are entertained when a record is offered merely to prove facts, such as the event of hospitalization, treatment prescribed, symptoms, given, or the existence of some readily ascertained substance or chemical within the body. Id., 266 Pa.Super. at 592, 405 A.2d at 1264.

■ A determination that a person is conscious is not a fact free from doubt. As is explained in *The Attorney's Textbook of Medicine*, vol. 3A, page 83–14 (1980), "in clinical medicine, a person is 'conscious' if he is fully aware of his surroundings, even though he may be misinterpreting or falsely interpreting these surroundings." We believe that this determination is of a different character than the routine findings of fact permissible under the business records exception to the hearsay rule since it requires the application of scientific principles. The notation in question in this case is found in the section of the report entitled "Physician's Findings." The introduction of such evidence should be by testimony of the person who made the determination.

Despite the error of the lower court, we would not reverse on this issue alone. Appellant testified that she drifted in and out of consciousness while in the hospital. The hospital record stated only that she was conscious at the time of the examination. It provides no real refutation of appellant's own position and its admission was therefore harmless error.

Appellant also claims that the charge to the jury was erroneous in three respects.

■ In analyzing appellant's claim, we have been guided by the principle that a charge to the jury is to be read as a whole. *Galizia v. McKim*, 210 Pa.Super. 144, 149, 232 A.2d 213, 216 (1967).

■ Appellant first argues that the following charge should have been given.

A driver cannot carelessly inflict injuries on users of highways between crossings. His duty is governed entirely by the circumstances of whether he saw such persons in

the way in time to avoid hitting them, or whether he should have anticipated their acts when they had committed themselves to a dangerous position.

Appellant complains that the charge given did not inform the jury that a driver can be required to anticipate the acts of pedestrians who have committed themselves to dangerous positions. The case from which appellant drew the language for the proposed charge is *Purdy v. Hazletine*, 321 Pa. 459, 184 A. 660 (1936). The *Purdy* court was quoting language from an earlier opinion in which the court also said:

> ... if at a designated place where there is anything to challenge his attention, and warn him that he should expect heedless acts, it becomes the duty to avoid, if possible, an accident ... 321 Pa. at 461, 184 A. at 661.

The charge given in the present case complied with the description of a driver's duty found in *Purdy*. In relevant part, the instruction was:

> However, if a pedestrian before being hit has been on the highway for a long enough period of time so that a careful driver could see her and avoid the accident, and if the pedestrian is then hit, you may conclude that negligence has then been established on the part of the driver, whether or not that took place in this case will, like all of the other facts be for you to determine. The operator of a vehicle is under a duty to be attentive, to discover the presence of a pedestrian in the highway ahead of him. He has an affirmative duty to observe pedestrians in his range of vision and to take precautions not to injure them. His failure to see a pedestrian in the middle of the road just before striking him is evidence of negligence.

Appellant argues next that the judge should have charged the jury that "If a pedestrian commits himself or herself to crossing a street substantially ahead of an approaching automobile, the pedestrian has a right of way superior to that of the automobile."

■ Appellant cites the case of *Clarke v. Hughes*, 108 Pa.Super. 586, 165 A. 532 (1933) as support for his proposi-

tion. That case is factually different than the present one, though, since the pedestrian in that case was crossing the street at an intersection. Pedestrians have the right of way at intersections, but not between them.

The controlling statute provides as follows:

"3542. *Right of way of pedestrians in crosswalks.*

(a) *General Rule.*—When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection."

"3543. *Pedestrians crossing at other than crosswalks.*

(a) *General Rule.*—Every pedestrian crossing a roadway at any point other than a crosswalk at an intersection or any unmarked crosswalk shall yield the right-of-way to all vehicles upon the roadway."

▮ Act of June 17, 1976, P.L. 1621 No. 81 § 1, 75 Pa. CSA §§ 3542, 3543. Of course it is true, as appellant states, that a driver cannot carelessly inflict injuries on pedestrians, regardless of who has the right of way. The jury was so instructed, as is apparent from a reading of the aforementioned section of the charge.

▮ The point proposed by appellant went further, however, saying, in effect, that a pedestrian acquires a right of way if he proceeds into the intersection at any place. We find no law to support this position and indeed, it is contrary to the statute.

▮ Finally, we come to appellant's allegation that the jury should have been instructed that a driver who is proceeding on a roadway at a point between intersections has a duty to sound his horn if, under the circumstances, he has a reasonable apprehension that a pedestrian may appear in his path. We agree with appellant that this instruction should have been given to the jury.

In *McAvoy v. Kromer*, 277 Pa. 196, 120 A. 762 (1923) our Supreme Court said that "[between crossings] . . . drivers are not required to sound their horns, unless they see danger

ahead or have reasonable apprehension to believe a child or adult will appear in their path." 277 Pa. at 199, 120 A. at 763. In *McAvoy* the court found that the driver did not have such a duty because the pedestrian whom he hit was not in the roadway long enough to be seen. Similarly in *Justice v. Weymann*, 306 Pa. 88, 158 A. 873 (1932), cited by appellee, the pedestrian was not within the view of the driver prior to the accident. The decisions in *Justice* and *McAvoy* provide no support for appellee's argument.

In the present case, the driver testified that he saw the pedestrian a "couple hundred feet" before hitting her and that he reduced his speed upon seeing the appellant. The appellee therefore had the warning that was absent in the *McAvoy* and *Justice* cases and his reduction of speed indicates that he perceived the possibility of danger to the pedestrian. Appellant was standing in the roadway in full view of the appellee. Her position was such as to suggest danger. The jury could have found that appellee had a reasonable apprehension that a pedestrian would appear in his path. The jury should therefore have been instructed that if they found that appellee had such apprehension, he had a duty to sound his horn.

We reverse the order of the lower court and remand for a new trial at which the jury is to be charged as appellant requested in her proposed charge on sounding the horn. At the new trial, the hospital record should not be introduced to show the notation of no loss of consciousness.

SPAETH and HOFFMAN, JJ., concur in result.