## Anderson v. Russell

*William A. Duncan*, for plaintiff.
*George F. Douglas*, for defendants.

SHUGHART, *P.J.*, April 26, 1983—The minor plaintiff brought this action by his guardian to recover damages for personal injuries allegedly caused by the negligence of defendant Lee Russell. Russell's employer, John F. Walters Excavating, Inc., was joined as a defendant upon a theory of vicarious liability. A trial, limited to the issue of the defendants' liability, was held before a jury on September 27, 1982, which returned a verdict exonerating defendants of liability. Plaintiff duly filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. At the outset, we note that nothing in the record supports entry of judgment nov, and the motion therefor will be dismissed.

The grounds for new trial relate to two rulings made at trial, one permitting certain direct testimony of Middlesex Township Police Chief Frank Frey to go to the jury over the objection of plaintiff's counsel, the other barring plaintiff from referring to any portion of Wolf's Bridge Road as a no-passing zone. For reasons that will be made plain below, we are convinced that the objectionable portion of

Chief Frey's testimony should not have gone to the jury. We further believe that a substantial chance exists that the evidence was prejudicial to plaintiff and therefore, that a new trial should be granted.

The impetus of this litigation was an accident that occurred on Wolf's Bridge Road, Middlesex Township, in the afternoon of April 18, 1980. Minor plaintiff was riding a bicycle in a northerly direction along the road, when he was hit from behind by a truck owned by Walters and operated by Russell. Minor plaintiff testified at trial that the last thing he remembers before the collision was traveling in the right-hand lane of the road about three feet from the right edge. On the other hand, the defense witnesses related that minor plaintiff had darted left into the path of the truck just as the truck driver attempted to go around him. This in substance was Russell's testimony. It was also the testimony of two eyewitnesses to the accident, Mary Garman and Elsie Lesh.

The allegations of negligence in the complaint were based, at least in part, on a claim that Russell "failed to turn a sufficient distance to the left when overtaking the minor plaintiff on his bicycle so as to avoid striking plaintiff." It is clear that a determination of the point in the road occupied by the minor plaintiff's bicycle when the truck and bicycle came in contact (right-hand lane or left-hand lane) was very significant with respect to the question of Russell's negligence.

Before Chief Frank Frey was called to the stand, a conference between counsel and the trial judge took place. At that time, the defense counsel offered to prove by Chief Frey's testimony (1) the length of the skid marks on the road, (2) the position of the vehicles after the accident, and (3) the point of impact as determined by observation of markings on

the road. The trial judge ruled that Chief Frey could testify as to what he observed at the accident scene including any marks on the road but that "the point of impact [was] a conclusion the jury [would] have to reach." N.T. 14X.[1]

This conference should have defined the scope of the testimony. Unfortunately, Chief Frey promptly interjected his assessment of the point of impact into the record. Plaintiff's counsel objected, but Chief Frey was permitted to testify that he determined the point of impact through observation of gouge marks in the road.

There were possibly two points of impact involved in this case. The first is of course the point at which the bicycle came in contact with the macadam highway. The second and important point of impact refers to the point in the road at which the truck and the bicycle collided. Since both vehicles were traveling in the same direction, it is possible or even likely that the bicycle was propelled forward for some distance before it struck the road. In short, the marks on the road may have indicated but did not conclusively indicate the point where the vehicles came together. Frey's positive testimony regarding point of impact was in violation of the original understanding and should have been excluded.

Since Chief Frey did not personally witness the accident, his thoughts on point of impact were no more than an opinion. The rule as to opinion testimony is clear. As we implied in the initial trial ruling, witnesses are normally limited to recounting the facts they observed; the responsibility for drawing conclusions from those facts is vested in the jury. See Delair v. McAdoo, 324 Pa. 392, 188 Atl.

---

1. The page reference here is to an excerpt from the notes of testimony of the September 27, 1982, trial.

(1936). There are exceptions to the rule. For example, witnesses with special knowledge or expertise in a given area can testify to "matters beyond the ken of the ordinary juror." Commonwealth v. Johnson, 33 Cumberland L. J. 175, 187 (1983). But Chief Frey was not offered as an expert witness in this case, nor do we find him to have any special knowledge with respect to accident reconstruction. This fact distinguishes the case of Commonwealth v. Speelman, 235 Pa. Super. 109, 341 A.2d 138 (1975), cited by defendants. In admitting a police officer's testimony as to point of impact in that case, Judge Price observed that "[t]he officer has a claim to special knowledge which made his testimony useful to the jury. Altman v. Lande, 84 Pa. Super. 399 (1925)." Id. at 114, 341 A.2d at 140. This language might be read to support the broad proposition that police officers, because of the nature of their job, are deemed to possess special knowledge enabling them to render an opinion as to point of impact. Such a reading would require faith in a supposition that flies in the face of experience, however. In truth many police officers have no greater understanding of the dynamics of an automobile accident than does the average juror. Furthermore, Judge Price's citation to Altman v. Lande undercuts such a broad reading. The Altman court admitted opinion testimony, but in that case the competence of the witness had been affirmatively demonstrated to the satisfaction of the trial judge. As noted earlier, the absence of a demonstration of the special knowledge of the witness marks this case as distinct from the situation in Speelman and Altman.

With the exception of Speelman, which is distinguishable, we found no Pennsylvania cases admitting a police officer's opinion as to the point of impact. We did find specific rulings indicating that a

police officer who did not witness the accident may not offer an opinion as to the cause of the accident. Brodie v. Philadelphia Transportation Co., 415 Pa. 296, 203 A.2d 657 (1964); Smith v. Clark, 411 Pa. 142, 190 A.2d 441 (1963); Lesher v. Henning, 302 Pa. Super. 508, 449 A.2d 32 (1982). Defendants point out that Chief Frey did not testify as to cause. They cite Ernst v. Ace Motor Truck Sales, Inc., 550 F. Supp. 1220 (E.D., Pa., 1982), a federal case in which a police officer's testimony as to point of impact was admitted. The Ernst court clearly based its decision on the Federal Court Rules of Evidence. By way of footnote dicta, however, the court offered the following gratuitous assessment of Pennsylvania law on the issue.

"Plaintiff cites a number of state court decisions granting new trials because of opinion testimony by police officers. However, in those cases it was opinion testimony as to the cause of the accident which was prohibited. See Brodie v. Philadelphia Transp. Co., 415 Pa. 296, 299, 203 A.2d 657, 658 (1964). Here, Officer Rupp's testimony simply goes to where the accident happened — not what caused it. Similarly, in Morris v. Moss, 290 Pa. Super. 587, 591-92, 435 A.2d 184, 186 (1981), the court allowed an officer to render an opinion with respect to the speed a car was traveling by analyzing skid marks. The speed of a car and the point of impact are similar; they are circumstances surrounding the accident. Therefore, even if Pennsylvania law were applicable, the evidence would likely be admissible." Ernst, 550 F. Supp. at 1223 n. 3. With all due respect to our brethren on the federal bench, we cannot agree with their analysis of state law, at least not in the context of this case. Morris v. Moss, supra, is another case in which police opinion testimony was let in because of the demonstrated special knowl-

edge of the police officer. Thus, that case falls within the line of cases discussed above such as Commonwealth v. Speelman, supra, and Altman v. Lande, supra, and is of no help to defendants here.

More fundamentally, we disagree with the premise that opinion testimony as to point of impact should necessarily be treated differently than opinion testimony as to cause of the accident. In many instances, including the situation presented by the instant case, the rationale for excluding an officer's opinion as to cause of the accident applies just as cogently to an officer's opinion testimony as to point of impact. The reason for keeping opinion testimony as to causation from the jury is found in Smith v. Clark, 411 Pa. 142, 147, 190 A.2d 441, 443-44 (1963).

"The witness's answer was tantamount to saying that the driver's condition caused him *not* to make the curve. Since the police officer did not view the actual occurrence, his opinion was speculative and an invasion of the jury's exclusive prerogative." (Emphasis in original.) If there is no showing that the police officer possesses special knowledge, his testimony as to the cause of an accident is mere speculation. Additionally, the chance of prejudice is intolerably high since the jury might understandably be tempted to defer to the police officer's assessment. Thus, we have the specter of the policeman's unbridled speculation substituting for the reasoned decision of a jury taking in account only such facts as were demonstrated by competent evidence at trial.

Precisely the same concern is present in the instant case. The location of the minor plaintiff's bicycle in the road, be it right-hand lane or left-hand lane, was vital to a determination of negligence. Chief Frey's speculation, locating the point of im-

pact in the left-hand lane, went to the heart of the issue. The likelihood of the jury accepting without question the officer's opinion, seemingly marked with the imprimatur of knowledge and experience, was unacceptably high — the resultant prejudice to plaintiff, too great. Two other defense witnesses indicated that the bicycle was in the left or wrong lane at the time of impact. Nonetheless, in the face of the dispute over the point of impact, we simply cannot say with certainty that the tainted evidence had no effect on the jury. See Lesher v. Henning, 302 Pa. Super. 508, 449 A.2d 32 (1982).

The question of whether Wolf's Bridge Road is a no-passing zone remains, but our decision of the first issue has in effect rendered consideration of it premature. Nevertheless, since a new trial is necessary in any event, a few remarks are in order. We believe our original ruling on this matter was correct. Chief Frey testified that Wolf's Bridge Road was not designated by township authorities as a no-passing zone. We are satisfied that this was a matter about which Chief Frey had some legitimate knowledge, and we accept his testimony. Furthermore, the applicable statute, 75 Pa. C.S. §3307,[2] clearly requires that markings on the road indicating no-passing zones must be accompanied by signs along the side of the road marking the beginning and end of each no-passing zone. Plaintiff admits there were no signs on Wolf's Bridge Road.

## ORDER OF COURT

And now, April 26, 1983, for the reasons appearing in the opinion filed this date, plaintiff's motion

---

2. Vehicle Code of June 17, 1976, as amended, 75 Pa. C.S. §3307.

for judgment nov is denied. The motion for new trial is hereby granted.