581 A.2d 956

**COMMONWEALTH of Pennsylvania**

v.

**Timothy J. SULLIVAN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 6, 1990.

Filed Oct. 31, 1990.

Ramy I. Djerassi, Philadelphia, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warrington, for Com.

Before OLSZEWSKI, DEL SOLE and HUDOCK, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence. A jury convicted Timothy J. Sullivan, appellant, of driving under the influence of alcohol or controlled substance, 75 Pa.C. S.A. § 3731; homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735; three counts of homicide by vehicle, 75 Pa.C.S.A. § 3732; and involuntary manslaughter, 18 Pa.C.S.A. § 2504. Sullivan was acquitted of the charge of accidents involving death or personal injury, 75 Pa.C.S.A. § 3742. Sullivan was sentenced to a term of imprisonment of not less than three and one-half years to not more than seven years in a state correctional institution and was fined $5,000.00.

Sullivan calls upon us to determine: (1) whether the trial court committed error when it admitted into evidence his statement to the police, "Oh, I'm drunk;" and (2) whether the result of the blood alcohol test was properly admitted into evidence. We affirm.

On November 7, 1986, Sullivan was driving westbound on State Road in Bristol Township, Pennsylvania, when he struck the victim who was walking on the shoulder of the road. The victim died four days later. Sullivan drove off but subsequently returned to the accident scene after the police had arrived. Police Officer Hadzick noticed that the right front of Sullivan's vehicle was damaged and the right side of the windscreen was cracked. The vehicle also fit the description of the vehicle which witnesses stated had hit the victim. Sullivan asked the officer whether he had hit something. Officer Hadzick noticed an odor of alcohol emanating from Sullivan. When Sullivan could not produce his driver's license, Officer Hadzick asked him to exit his vehicle.

Sullivan staggered out of his vehicle, and Hadzick had to support him to prevent him from stumbling. Sullivan was unable to walk to the rear of his vehicle without assistance, his eyes were glassy, his speech was slurred, and he said, "I think I struck a dog." Officer Hadzick asked Sullivan to recite the alphabet; Sullivan could not. During this field

sobriety test, Sullivan said, "Oh, I'm drunk." Sullivan was arrested and a blood alcohol test revealed a .47 blood alcohol level.

## I.

■ Sullivan argues that because he was subject to a custodial interrogation and had not received *Miranda* warnings, his statement, "Oh, I'm drunk," should not have been admitted into evidence. We disagree.

We find that *Commonwealth v. Toanone,* 381 Pa.Super. 336, 553 A.2d 998 (1989), is dispositive of this issue. In *Toanone,* we stated that

[T]he United States Supreme Court has clarified that police need only give *Miranda* warnings while detaining a suspect by the side of a public highway when the suspect is actually placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation. Thus, in the typical situation in which a motorist is temporarily ordered to remain by the side of his car, *Miranda* warnings are not essential.

*Id.* at 348, 553 A.2d at 1003 (*citing Pennsyvlania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988)).

Sullivan argues that he was not subject to an ordinary traffic stop; the relevant question is whether he was in custody. *Id.* (*citing Commonwealth v. Gonzalez,* 519 Pa. 116, 122–124, 546 A.2d 26, 29–30 (1988) (plurality opinion) (other citations omitted)). Our review of the record reveals that he was not. Sullivan was not placed under arrest, forced to enter a police patrol car, subjected to coercion, nor subjected to prolonged questioning during the traffic stop. As in *Toanone:*

The defendant was asked a few question (sic) and directed to perform a few simple sobriety tests while standing at the side of his vehicle in a public area. Therefore, *Miranda* warnings were not required.

*Id.* Therefore, Sullivan's voluntary, spontaneous utterance of, "Oh, I'm drunk" after he could not recite the alphabet was properly admitted.

## II.

■ Sullivan presents various reasons to support his assertion that the blood alcohol test result should not have been admitted. Initially, he argues that the Commonwealth's failure to produce the chemist who performed the test on his blood violated his Sixth Amendment right to confrontation. We disagree. In *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 558 A.2d 865 (1989), we held that the right to confrontation was not violated when blood tests results were admitted without the presence of the technician who tested the blood. *Id.*, 384 Pa.Superior Ct. at 355, 558 A.2d at 870. We reiterate:

... a blood-alcohol test is basic and routine, it is highly reliable and thus rises above mere opinion or conclusion to the level of medical fact.

*Id.*, 384 Pa.Superior Ct. at 350, 558 A.2d at 867 (citations omitted).

■ Sullivan also argues that since the Commonwealth did not show that the chemist who performed his blood alcohol test was unavailable to testify, admitting the result of that test was error. Again, we disagree. In *Commonwealth v. Karch*, 349 Pa.Super. 227, 502 A.2d 1359 (1986) (plurality), we held that blood alcohol test results were properly admitted into evidence without the presence of the technician who performed the test. It is because a blood alcohol test is basic and routine and, therefore, highly reliable, that the safeguards ordinarily afforded by confrontation and cross-examination are not required. *Id.*, 349 Pa.Superior Ct. at 229, 502 A.2d at 1361. *See also, Commonwealth v. Seville*, 266 Pa.Super. 587, 590, 405 A.2d 1262, 1264 (1979).

■ Sullivan distinguishes our holding in *Karch* and *Seville* from his case by alleging that since his blood alcohol test result was so high, it was not reliable. Sullivan also contends that since the chemist who tested his blood alcohol content left the employment of the testing laboratory be-

cause of the pressures of performing blood tests, his blood test result was unreliable and should not have been admitted. Sullivan cites no authority to support these arguments. A review of the notes of testimony reveals that the director of the testing laboratory testified regarding his own qualifications, he is a toxicologist, and regarding the qualifications of the chemist who tested Sullivan's blood, who has a bachelor's degree in chemistry and twelve years' experience as a chemist. The director and a police officer testified regarding the chain of custody. Furthermore, the director described the type of blood test that was performed, his laboratory's operating procedures, and how he interpreted the test results. Finally, he was extensively cross-examined by defense counsel.

■ We find that the blood alcohol test result was reliable and could be admitted. When determining whether blood alcohol test results were properly admitted, we are primarily concerned with the qualifications of the person performing the blood test and the equipment used, *Commonwealth v. Zelinski*, 392 Pa.Super. 489, 496, 573 A.2d 569, 573 (1990); whether the laboratory was licensed and approved by the Department of Health, [75 Pa.C.S.A. § 1547(c)(2) ]; and the chain of custody, *Kravontka, supra*, 558 A.2d at 871. When the director of the testing laboratory testified, his testimony covered the aforementioned areas. Consequently, we find that the blood test result was reliable and was properly admitted; therefore, Sullivan's argument fails.

■ As to Sullivan's argument that the high result of the blood alcohol test renders it presumptively unreliable, we hold that such a contention goes to the weight of the evidence, not its admissibility. As noted above, evidence as to proper test procedure was presented. Sullivan introduced evidence through his own witnesses that such a high result, .47, would render most individuals unconscious. Cross-examination of the Commonwealth's experts revealed the same information. Yet no expert opined that it would be impossible for an individual to function with such a high

blood alcohol level. It is the prerogative of the fact-finder to believe all, part or none of the evidence presented. *Commonwealth v. Lyons*, 382 Pa.Super. 438, 555 A.2d 920 (1989). This admissible evidence was properly before this jury.

Judgment of sentence affirmed.