J-A02014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL STARK | : | No. 759 WDA 2022 |

Appeal from the Order Entered June 24, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000976-2021

BEFORE:  BOWES, J., OLSON, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                          **FILED:  April 28, 2023**

The Commonwealth of Pennsylvania appeals from an order entered on June 24, 2022, which granted a motion to suppress filed by Appellee, Michael Stark.  The Commonwealth contends that the trial court abused its discretion or committed an error of law in granting Appellee's motion.  After careful review, we reverse the trial court's suppression ruling and remand for further proceedings.

The trial court summarized the relevant facts established at the May 31, 2022 suppression hearing as follows:

> On January 2, 2022, Officer [Richard] Oddi of the Cecil Township Police initiated a traffic stop of a silver Ford Mustang [because] the registered owner of the vehicle [possessed] a suspended drivers' license.  The driver of the vehicle matched the profile of the registered owner, [Appellee].  The officer was in an unmarked vehicle but wore full uniform.  After approaching the vehicle, [Officer Oddi] confirmed that [Appellee] . . . was the driver.  [Appellee] acknowledged that his license was suspended and[, upon Officer Oddi's request for

his license and registration, Appellee gave him] a credit card for identification. The passenger of the vehicle provided a drivers' license. [Officer Oddi] took the credit card and license to his patrol vehicle, [and instructed] the occupants of the [vehicle] to "sit tight["] and "[not to] get out of the car." [After several minutes, Officer Oddi] again returned to the vehicle to ask [Appellee] his address, which he provided [*via*] two traffic citations[. During this interaction, Officer Oddi] asked [Appellee] where he was coming [from], to which [Appellee] responded, "[c]ame from Pittsburgh[, Pennsylvania], came to see him . . . not even gonna [*sic*] lie, I came to smoke with him."

[Officer Oddi's] next question to [Appellee] was, "Did you have some already?" [Appellee] admitted that he smoked about an hour prior. [Officer Oddi then asked if either Appellee or the passenger had a medical marijuana card. Appellee indicated he did not. The passenger stated he did have a medical marijuana card, but it was not with him. Lastly, Officer Oddi] asked if there [was] any marijuana in the vehicle, to which [Appellee] answered, "Yes."

Officer Oddi then returne[d] to his patrol vehicle. When another officer arrive[d] at the scene[, the officer asked what was] going on [and] Officer Oddi responde[d], "[Appellee] admitted to smoking an hour and a half ago, said there [was] weed in the car, someone has a medical marijuana card but it [is] not him . . . gonna [*sic*] take the driver out first."

The officers then instructed [Appellee] to exit the vehicle. [Appellee] consented to a search of his person and his vehicle. The officers did not find any other paraphernalia or contraband in the vehicle or on [Appellee]. The passenger was arrested for possession and placed in the patrol vehicle. The officers [] subjected [Appellee] to [Standardized Field Sobriety Tests ("SFST") and Advanced Roadside Impaired Driving Enforcement ("ARIDE")] field testing. Officer Oddi testified that the field testing revealed [that Appellee] showed signs of impairment, but did not so indicate in either the affidavit of probable cause or his testimony [during the suppression hearing] which test [revealed] signs of impairment, nor was it evident from the bodycam footage. [Appellee] was [subsequently] arrested and taken to the hospital for blood testing, to which he consented. The blood testing results indicated positive [] marijuana and its metabolites.

Trial Court Order, 6/24/22, 1-3.

The Commonwealth charged Appellee with three counts of driving under the influence ("DUI"): controlled substance – schedule I; DUI: controlled substance – Section II or III; and driving while license is suspended or revoked DUI. On March 23, 2022, Appellee filed an omnibus pre-trial motion, seeking to suppress the evidence obtained from the sobriety field testing, as well as his blood test results. Appellee argued that, at the time Officer Oddi asked him if "he [already] smoke[d] some marijuana" he was subjected to a custodial interrogation, warranting the issuance of **Miranda**[1] warnings. Appellee's Omnibus Pre-Trial Motion, 3/23/22, at 7. Hence, Appellee claimed Officer Oddi's failure to issue **Miranda** warnings rendered "all of [his] answers to [police] questioning, . . . [the] field sobriety testing, [the] observations and the blood draw . . . fruit of the poisonous tree requiring suppression." **Id.** As such, Appellee asked the trial court to suppress his statement indicating he smoked marijuana an hour prior to driving, together with the results of his blood test.

A suppression hearing was held on May 31, 2022, during which Officer Oddi testified. **See** N.T. Suppression Hearing, 5/31/22, at 1-33. On June 24, 2022, the trial court granted Appellee's motion. Trial Court Order, 6/24/22, at 1-6. Specifically, the trial court held that Appellee was "in custody" after Officer Oddi initiated the traffic stop and then told Appellee to "'sit tight' and

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

remain in his vehicle." ***Id.*** at 4. In addition, the trial court concluded that Officer Oddi's question, "[d]id you have some already?", lodged in response to Appellee's admission that he "intend[ed] to smoke marijuana once he reached his destination" was "the functional equivalent of interrogation" and, as such, Appellee was subjected to a custodial interrogation, necessitating the issuance of ***Miranda*** warnings. ***Id.*** Because Officer Oddi failed to ***Mirandize*** Appellee, the trial court held that Appellee's admission that he smoked marijuana an hour prior to driving was inadmissible. ***Id.*** In addition, the trial court held that, absent Appellee's statement, Officer Oddi "did not have reasonable suspicion to conduct the field testing and subsequently arrest [Appellee] for suspicion of DUI." ***Id.*** at 6. Based upon the foregoing, the trial court suppressed the evidence obtained as a result, *i.e.*, Appellee's field test and blood test results. ***Id.***

On June 29, 2022, the Commonwealth filed a timely notice of appeal from the trial court's June 24, 2022, interlocutory order and, within the Commonwealth's notice of appeal, the Commonwealth properly certified that the order "terminates or substantially handicaps the prosecution." Commonwealth's Notice of Appeal, 6/29/22, at 1; ***see also*** Pa.R.A.P. 311(d).[2]

---

[2] "Certification of pretrial appeals by the Commonwealth [under Pennsylvania Rule of Appellate Procedure 311(d)] is an exception to the requirement that appeals may be taken only from final orders." ***Commonwealth v. Cosnek***, 836 A.2d 871, 873 (Pa. 2003). As our Supreme Court has explained, "[w]hen a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability

*(Footnote Continued Next Page)*

The Commonwealth raises the following issue on appeal:[3]

> Does the initial questioning during a roadside investigation regarding the driver's use of marijuana require the defendant to be given **Miranda** warnings?

Commonwealth Brief at 6.

When reviewing a challenge to a suppression ruling, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the [defense] prevailed before the suppression court, we may consider only the evidence of the [defense] and so much of the evidence for the [Commonwealth] as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may

_____

to prove every essential element of his case. Additionally, only the prosecutor can judge whether he can meet his constitutional burden of proving his case without that evidence." **Id.** at 875 (citations omitted). In following, the Supreme Court has held that the Commonwealth may utilize Rule 311(d) to immediately appeal "a pretrial ruling [that] results in the suppression, preclusion or exclusion of Commonwealth evidence." **Id.** at 877.

[3] On October 28, 2022, Appellee filed an application to dismiss, arguing that the Commonwealth failed to comply with various appellate rules in drafting its brief and failed to file a reproduced record, and, as such, this Court should dismiss or quash this appeal pursuant to Pa.R.A.P. 2101. **See** Appellee's Application to Dismiss Appeal for Failure to Comply with Pennsylvania Rules of Appellate Procedure, 10/28/22, at 1-5. On November 2, 2022, the Commonwealth filed its reproduced record. Although we do not condone the Commonwealth's failure to strictly comply with the appellate rules, the defects in the Commonwealth's brief and the untimely filing of the reproduced record do not hinder our appellate review and therefore we decline to quash or dismiss the appeal. **See Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity**, 32 A.3d 800, 804 n.6 (Pa. Super. 2011) (_en banc_), _aff'd_, 91 A.3d 680 (Pa. 2014) (citations omitted).

reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted and formatting altered).

Herein, the Commonwealth argues that the trial court erroneously suppressed the incriminating statement Appellee made to police during a lawful traffic stop. *i.e.*, Appellee's admission that he smoked marijuana before driving.[4] In particular, the Commonwealth argues that, under the precedent set forth by the United States Supreme Court, "police need only give *Miranda* warnings" if a motorist is "placed under arrest or when the questioning of a suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation." Commonwealth Brief at 17. Because Appellee was only subjected to a temporary investigatory detention and was not, in fact, "in custody" at the time he made the challenged statement, the Commonwealth argues that the trial court erred in granting suppression because "*Miranda* warnings [were] not essential." *Id.* We agree.

Under Pennsylvania law, there are three categories of police-citizen interactions. As our Supreme Court has clearly articulated:

---

[4] There is no dispute "that the traffic stop for driving under suspension was valid." Trial Court Order, 6/24/22, at 3.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012), *appeal denied*, 48 A.3d 1247 (Pa. 2012), *quoting* *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995).

"It is long-settled that *Miranda* warnings are only required for the third-level interaction, *i.e.*, custodial interrogation." *Commonwealth v. Spence*, 2023 WL 2002292 *1, *9 (Pa. Super. Feb. 15, 2023), *citing* *Commonwealth v. Smith*, 836 A.2d 5 (Pa. 2003). Importantly, though, "it is equally settled law that a motor vehicle stop is generally a second-level interaction, an investigatory detention." *Id.*, *citing* *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa. Super. 2006). We previously stated:

[a] traffic stop constitutes an investigative rather than a custodial detention, unless, under the totality of the circumstances, the conditions and duration of the detention become the functional equivalent of arrest. Since an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for *Miranda* purposes.

*Commonwealth v. Mannion*, 725 A.2d 196, 202 (Pa. Super. 1999) (*en banc*) (citations omitted).

The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the

basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Commonwealth v. Baker*, 24 A.3d 1006, 1019-1020 (Pa. Super. 2011) (citations omitted), *aff'd*, 78 A.3d 1044 (Pa. 2013).

An ordinary traffic stop becomes "custodial" when the stop involves coercive conditions, including, but not limited to, the suspect being forced into a patrol car and transported from the scene or being physically restrained. Such coercive conditions constitute "restraints comparable to arrest" so as to transform the investigative nature of an ordinary traffic stop into custodial interrogation.

*Mannion*, 725 A.2d at 202 (internal citation omitted). Thus, "police need only give *Miranda* warnings while detaining a suspect by the side of a public highway when the suspect [has] actually [been] placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation." *Commonwealth v. Toanone*, 553 A.2d 998, 1003 (Pa. Super. 1989) (citations and footnote omitted).

Herein, the testimony at the suppression hearing revealed that Officer Oddi initiated a valid traffic stop after he "ran the registration plate for [Appellee's] vehicle" and learned that "the registration showed that [Appellee] was DUI suspended." N.T. Suppression Hearing, 5/31/22, at 5-6. After initiating the traffic stop based upon probable cause, Officer Oddi approached the vehicle and asked Appellee for "identifying information." *Id*. at 6.

Appellee responded that he "lost his license" but provided Officer Oddi with a credit card. **Id.** Officer Oddi then returned to his patrol vehicle to "confirm" Appellee's identity, requesting him to "sit tight" and not to "get out of the car." Appellee's (Defendant) Suppression Hearing Exhibit 1, 5/31/22, at 3:48. After approximately six minutes passed, Officer Oddi reapproached Appellee's vehicle "to gather a correct address." N.T. Suppression Hearing, 5/31/22, at 7. Appellee handed Officer Oddi vehicle citations which presumably contained his address. **Id.** During this interaction, Officer Oddi asked Appellee "where he was coming from," to which Appellee responded, "Pittsburgh[, Pennsylvania,]" and voluntarily offered that he and the passenger "were going to go smoke [marijuana]." **Id.** at 8; **see also** Appellee's (Defendant) Suppression Hearing Exhibit 1, 5/31/22, at 10:26. In response to Appellee's statement, Officer Oddi asked Appellee "[d]id you smoke some already?" **Id.** at 10:30. Appellee responded in the affirmative, adding that he smoked marijuana about an hour prior. **Id.** Officer Oddi then asked whether there was any marijuana in the vehicle and Appellee again responded in the affirmative. **Id.** at 10:46.

The fundamental question on appeal is whether, after Appellee was subjected to an investigatory detention during a valid traffic stop, the circumstances elevated to a custodial interrogation, requiring the issuance of **Miranda** warnings. The following factors are relevant to our review: (1) the stop occurred on a public roadway during the day; (2) during the relevant time, Officer Oddi was the only officer present at the scene and interacting

with Appellee; (3) Officer Oddi detained Appellee because his registration showed DUI suspended; (4) during the initial encounter, Appellee admitted his license was suspended; (5) Officer Oddi requested Appellee's identifying information and Appellee provided Officer Oddi with a credit card, rather than a driver's license; (6) Officer Oddi then returned to his patrol car to run Appellee's information through the police data system and, before doing so, told Appellee to "sit tight" and not to "get out of the car;" (7) because Appellee only provided Officer Oddi with his credit card, Officer Oddi reapproached Appellee's vehicle to obtain additional information regarding Appellee's address; (8) Officer Oddi asked where Appellee was coming from, Appellee responded, and then, without prompting, revealed his intention to smoke marijuana with the passenger of the vehicle; (9) based upon Appellee's statement, Officer Oddi asked whether Appellee already smoked marijuana, Appellee responded that he did about an hour prior; (10) Officer Oddi asked whether there was marijuana in the vehicle, and Appellee indicated there was; (11) the second interaction between Appellee and Officer Oddi lasted less than one minute; and (12) the detention, before Appellee made the incriminating statement, lasted less than 10 minutes, most of which Officer Oddi spent in his own patrol vehicle.

Viewed under the totality of the circumstances, it is apparent that Appellee was not subject to custodial arrest, and that the duty to issue *Miranda* warnings was not triggered when Appellee admitted to smoking marijuana an hour before driving. Officer Oddi, while investigating the

circumstances for which he originally initiated the traffic stop (driving under a suspended license) requested Appellee's identifying information and then told Appellee to "sit tight" so that he could run Appellee's information through the police data system. This order, itself, does not convert the interaction to a custodial detention. **See Commonwealth v. Williams**, 941 A.2d 14, 33 (Pa. Super. 2008) (explaining that the officer's order to "sit tight" did not make the appellant's "initial detention . . . so coercive or her freedom so curtailed as to constitute a former arrest," warranting the issuance of **Miranda** warnings).

However, because Appellee only provided Officer Oddi with a credit card during the initial encounter, Officer Oddi reapproached Appellee's vehicle to verify Appellee's address. At that time, Appellee, unprompted, provided Officer Oddi with additional information that gave Officer Oddi reasonable suspicion that Appellee may be impaired. Indeed, at the suppression hearing, Officer Oddi agreed that, after Appellee stated that he came to smoke marijuana with the passenger of his vehicle, Officer Oddi's investigation shifted "from [Appellee] just violating driving under suspension DUI related to also including . . . an investigation about whether or not [Appellee was] driving DUI." N.T. Suppression Hearing, 5/31/22, at 19. Hence, Officer Oddi was permitted to ask Appellee "a moderate number of questions . . . to try to obtain information confirming or dispelling [his] suspicions." **Spence**, 2023 WL 2002292 at *9 (quotation omitted). That is exactly what Officer Oddi did.

Based upon for foregoing, we conclude that Appellee's statement was not made under "coercive conditions" that "constitute[d] 'restraints

comparable to arrest.'" ***Mannion***, 725 A.2d at 202. To the contrary, Appellee's inculpatory admission was voluntarily uttered during a brief and relatively collegial encounter with police. Accordingly, ***Miranda*** warnings were not required, and the trial court erred in concluding Appellee's statement was inadmissible. ***See Spence***, 2023 WL 2002292 at *9-11 (holding that the trial court properly dismissed the appellant's motion to suppress because the relevant statements were made during an investigatory detention, not a custodial interrogation); ***Commonwealth v. Sullivan***, 581 A.2d 956, 957-958 (Pa. Super. 1990) (holding that a defendant-motorist was not in custody when subjected to an ordinary traffic stop and, as such, his spontaneous admission that he was intoxicated was not subject to ***Miranda***).

Moreover, we note the trial court also erred in concluding that Officer Oddi lacked reasonable suspicion to further investigate Appellee for DUI even without Appellee's statement. This Court previously explained:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer."

***Commonwealth v. Raglin***, 178 A.3d 868, 872 (Pa. Super. 2018) (internal citations omitted), *quoting* ***Commonwealth v. Rogers***, 849 A.2d 1185, 1189 (Pa. 2004).

Herein, testimony from the suppression hearing revealed that, during his initial interaction with Appellee, Officer Oddi noted Appellee was "annoyed," "antsy," and had "bloodshot and kind of swelling around the eyes." N.T. Suppression Hearing, 5/31/22 at 7. Moreover, when Officer Oddi asked for Appellee's identification, Appellee handed him a credit card. ***Id***. Then, after Officer Oddi reapproached and requested additional information regarding Appellee's address, Appellee handed Officer Oddi previous traffic citations. ***Id***. Finally, Appellee readily admitted his intention to smoke marijuana. ***Id***. at 8. In contrast to the trial court's decision, this behavior, taken together, was sufficient to provide Officer Oddi reasonable suspicion that Appellee was driving while impaired.

We therefore conclude that the suppression court improperly suppressed the field test and blood test results.[5] As such, we reverse the suppression court's June 24, 2022 order and remand this case for trial.

---

[5] In its June 24, 2022 order, the trial court noted that Officer Oddi "did not give ***Miranda*** warnings at any point during the encounter, even while informing [Appellee] that he was under arrest." Trial Court Order, 6/24/22, at 4. This was confirmed by our review of the body camera footage. However, the record does not indicate that Appellee made any inculpatory statements after his arrest, nor did Appellee argue before the trial court that any other statements should have been suppressed. In addition, there was no testimony at the suppression hearing that Officer Oddi issued ***Miranda*** warnings to
*(Footnote Continued Next Page)*

Order reversed. Appellee's application to dismiss appeal denied. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2023

---

Appellee before he submitted to a blood draw. The results of a blood draw, however, are not subject to suppression as a result of a 5th Amendment violation. **See *Schmerber v. California***, 384 U.S. 757, 765 (1966) (holding that "the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds").